**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x

Hanna Abigail Deutsch,
Naama Leah Deutsch,
Chizkiyahu Shalom Deutsch,
Elozor Dovid Berlin,
Chaya Rochel Kamenetsky,
Basya Engel,
Miriam Sharon Engel,
Naomi Margalit Engel,
Nechama Yuta Engel,                                    Civil Case No. _____
Yisrael Meir Engel,
Golda Thaler,
Jacob Thaler,
*individually,*
*and on behalf of all others similarly situated*,

                    *Plaintiffs*,

*v.*

New York State Board of Elections,
*and*
Peter S. Kosinski,
Douglas A. Kellner,
and Andrew J. Spano,
*in their official capacities as Commissioners*
*of the New York State Board of Elections*;
*and*
Todd D. Valentine,
Robert A. Brehm,
*in their official capacities as Co-Executive Directors*
*of the New York State Board of Elections;*
*and*
Andrew Cuomo,
*As Governor of the State of New York,*

                    *Defendants*.

--------------------------------------------------------------------x


**COMPLAINT**


1

## INTRODUCTION

1.      This Complaint challenges the arbitrary and unconstitutional application of a New York election deadline statute [N.Y. Elec. Law §11-202(1)(a)] by Defendants (the "Deadline Statute")[1], resulting in the disqualification of thousands (if not more) of overseas voting registration applications submitted via electronic mail.

2.      In accordance with federal law, New York has enacted legislation that allows for overseas voters to register to vote and receive an absentee ballot, provided the voters meet the qualifications for voting under New York law.

3.      Due to the COVID-19 global pandemic, the State of New York has enacted special voting legislation and directives aimed at assisting voters to register and cast their votes without the need to subject themselves to the dangers of the pandemic. *See*, for example, New York Executive Order No. 202.58 (Aug. 24, 2020) which suspends and modifies certain election related laws due to the COVID-19 "State disaster emergency," available at https://www.governor.ny.gov/news/no-20258-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

---

[1] The Deadline Statute states as follows:

A person, who, pursuant to this title, is qualified to vote as a special federal voter may, *by application received by the state board of elections or any local board of elections on or before the twenty-fifth day next preceding any election in which such person would be entitled to vote or the last day of local registration for such election, whichever is later*, apply to the board of elections of the county in which he resided in person or by personal application by mail for registration and enrollment as a special federal voter. An application for registration and enrollment pursuant to this article shall be treated as an application for a special federal ballot for every election in which the applicant would be eligible to vote which is held through and including the next two regularly scheduled general elections held in even numbered years, including any run-offs which may occur.

(Emphasis added)

4.      The global nature of the pandemic has led to modifications for overseas voters as well.  Now, overseas voters have been permitted to submit their applications for registration to vote via electronic mail, subject to certain conditions as alleged below.

5.      There are millions of American citizens residing overseas who are entitled to vote in the 2020 General Elections. *See* https://www.fvap.gov/info/reports-surveys/overseas-citizen-population-analysis.

6.      There are thousands of American citizens residing overseas who are entitled to vote in the 2020 General Elections in the State of New York under both federal and state law. These voters are required to register with a local board of election to vote in New York. In order to register to vote, these voters are required to submit an application to vote in accordance with the instructions of the Federal Voting Assistance Program, the New York election law and the directives of Defendant New York State Board of Elections.

7.      According to the website of the Federal Voting Assistance Program – a federal agency tasked with assisting overseas voters – all applications for New York voting registration must arrive by October 14, 2020, so long as they are *postmarked* by October 9, 2020.

8.      Plaintiffs, like thousands of similarly situated U.S. citizens around the world, reasonably understood that the notice on the FVAP website permitted them to submit their electronic mail registration applications – which obviously are not postmarked – no later than midnight on October 14, 2020.

9.      However, relying on the Deadline Statute, Defendants have insisted that all electronic mail application be received by no later than October 9, 2020, even though electronic mail applications are not subject to the postmark requirement, thereby disqualifying – upon information and belief—thousands of otherwise valid registration applications submitted prior to the October 14, 2020 deadline.

10.     Adding to this confusion is the fact that – upon information and belief – at least two counties in New York have been accepting overseas voters' applications that were received via electronic mail after October 9, 2020, but not later than October 14, 2020.

11.     This overly restrictive interpretation and application of the Deadline Statute contravenes Plaintiffs' right to vote and equal protection of the laws, as protected by the United States Constitution and therefore cannot be enforced as applied by Defendants to Plaintiffs and others similarly situated.

12.     Moreover, the ambiguity and vagueness of the Deadline Statute relied upon by Defendants also violated Plaintiffs' rights under the United States Constitution.

13.     These grave violations entitle Plaintiffs to the declaratory and injunctive relief they seek here. In addition, these violations entitle Plaintiffs to damages under 42 U.S.C. §1983.

14.     A motion for a preliminary injunction is being filed contemporaneously with this Complaint.

## JURISDICTION AND VENUE

15.     This Court has federal question jurisdiction under 28 U.S.C. §1331 because this is a lawsuit arising under the Constitution and laws of the United States: this lawsuit challenges Defendants' interpretation and application of the Deadline Statute under the United States Constitution, under the Uniformed and Overseas Citizens Absentee Voting Act, and under 42 U.S.C. §1983.

16.     Declaratory relief is available pursuant to 28 U.S.C. §§2201-2202.

17.     Venue is proper in this district pursuant to 28 U.S.C. §§1391(b)(1) and (2) because the acts that give rise to this action occurred, in substantial part, in this district and because Defendants' principal place of business is in this district.

## PARTIES

### A.  PLAINTIFFS

18.     Plaintiff Hanna Abigail Deutsch ("Hanna") is a United States citizen, residing in Alon Shvut, Israel. Hanna is eligible to vote in New York as a "Special Federal Voter" under N.Y. Elec. Law § 11-200.

19.     Plaintiff Naama Leah Deutsch is a United States citizen ("Naama"), residing in Alon Shvut, Israel. Naama is eligible to vote in New York as a "Special Federal Voter" under N.Y. Elec. Law §11-200.

20.     Plaintiff Chizkiyahu Shalom Deutsch is a United States citizen ("Chizkiyahu"), residing in Alon Shvut, Israel. Chizkiyahu is eligible to vote in New York as a "Special Federal Voter" under N.Y. Elec. Law §11-200.

21.     Plaintiff Elozor Dovid Berlin is a United States citizen ("Elozor"), residing in Jerusalem, Israel. Elozor is eligible to vote in New York as a "Special Federal Voter" under N.Y. Elec. Law §11-200.

22.     Plaintiff Chaya Rochel Kamenetsky is a United States citizen ("Chaya"), residing in Jerusalem, Israel. Chaya is eligible to vote in New York as a "Special Federal Voter" under N.Y. Elec. Law §11-200.

23.     Plaintiff Basya Engel is a United States citizen ("Basya"), residing in Jerusalem, Israel. Basya is eligible to vote in New York as a "Special Federal Voter" under N.Y. Elec. Law §11-200.

24.     Plaintiff Miriam Sharon Engel is a United States citizen ("Miriam"), residing in Jerusalem, Israel. Miriam is eligible to vote in New York as a "Special Federal Voter" under N.Y. Elec. Law §11-200.

25.     Plaintiff Naomi Margalit Engel is a United States citizen ("Naomi"), residing in Jerusalem, Israel. Naomi is eligible to vote in New York as a "Special Federal Voter" under N.Y. ELEC. LAW §11-200.

26.     Plaintiff Nechama Yuta Engel is a United States citizen ("Nechama"), residing in Jerusalem, Israel. Nechama is eligible to vote in New York as a "Special Federal Voter" under N.Y. ELEC. LAW §11-200.

27.     Plaintiff Yisrael Meir Engel is a United States citizen ("Yisrael"), residing in Jerusalem, Israel. Yisrael is eligible to vote in New York as a "Special Federal Voter" under N.Y. ELEC. LAW §11-200.

28.     Plaintiff Golda Thaler is a United States citizen ("Golda"), residing in Jerusalem, Israel. Golda is eligible to vote in New York as a "Special Federal Voter" under N.Y. ELEC. LAW §11-200.

29.     Plaintiff Jacob Thaler is a United States citizen ("Jacob"), residing in Jerusalem, Israel. Jacob is eligible to vote in New York as a "Special Federal Voter" under N.Y. ELEC. LAW §11-200.

## B.  DEFENDANTS

30.     Defendant New York State Board of Elections ("NYSBOE") is the bipartisan agency vested with the responsibility for administration and enforcement of all laws relating to elections in New York State.

31.     Defendants Peter S. Kosinski, Douglas A. Kellner, and Andrew J. Spano are commissioners and co-chairs of NYSBOE and are being sued in their official capacity.

32.     Defendants Todd D. Valentine and Robert A. Brehm are co-executive directors of the NYSBOE and are being sued in their official capacity.

33.     Defendant Andrew Cuomo is the Governor of the State of New York and is being sued in his official capacity.

34.     Defendants in this Complaint will be referred to collectively as the "Board."

## STANDING

35.     Plaintiffs have standing to bring this action because, as voters, they have suffered concrete injuries by reason of Defendants' alleged arbitrary and erroneous application of the Deadline Statute. The damage is the denial of their overseas registration applications, thus denying them the right to vote and participate in the November 3, 2020 General Election and exercise their right to vote for federal office (President, Vice President and members of the House of Representatives). Accordingly, the "injury-in-fact" and "causation" elements of Article III standing are satisfied.

36.     As for redressability, a decision granting the declaratory and injunctive relief sought in this lawsuit would cure the alleged injuries.

## LEGAL AND STATUTORY BACKGROUND

### A.  Registration of Special Federal Voters

37.     For federal elections, the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§1973ff to 1973ff-6, *transferred to* 52 U.S.C. §§20301, *et seq.* (the "UOCAVA" or the "Act") provides for registration and voting by United States citizens who formerly resided in one of the states and are now living abroad or serving in the military abroad.

38.     The Act is sometimes referred to as the Federal Post Card Application law, because it is through an official "post card form" that one obtains an absentee voter registration and ballot application.

39.     The Act requires the states to comply and authorizes the Attorney General to enforce its provisions.

40.     The Act mandates that states provide procedures simplifying the way that citizens living outside the United States may request ballots and vote absentee in their previous states of residence.

41.     The UOCAVA has been implemented by the State of New York in N.Y. ELEC. LAW § 11-200 *et seq.* ("NYEL").

42.     Section 11-200(1) of the NYEL – entitled "Special Federal Voters" –   grants every "citizen of the United States now residing outside the United States whose last domicile in the United States immediately prior to his departure from the United States was in the state of New York" to vote "from such last domicile, as a special federal voter […]".

43.     For those U.S. citizens who never resided in the United States, including Plaintiffs, Section 11-200(1-a) of the NYEL provides that

> Every citizen of the United States of voting age, residing outside of the United States, who has never resided within the United States, and who has one parent who qualifies as a special federal voter under subdivision one of this section, may register and vote as a special federal voter, from the qualifying parent's New York address, provided that person is otherwise qualified and eligible to vote.

44.     Plaintiffs' qualify as Special Federal Voters.

45.     Before receiving a ballot, a Special Federal Voter must first register with the Board and apply for a "special federal ballot."  Section 11-202 of the NYEL – entitled "Registration and enrollment of special federal voters and application for special federal ballot" – regulates the registration of Special Federal Voters and their applications for special federal ballots.

46.     N.Y. Elec. Law §11-202(1)(a)— the Deadline Statute– states as follows:

> A person, who, pursuant to this title, is qualified to vote as a special federal voter may, by application received by the state board of elections or any local board of elections on

or before the twenty-fifth day next preceding any election in which such person would be entitled to vote or the last day of local registration for such election, whichever is later, apply to the board of elections of the county in which he resided in person or by personal application by mail for registration and enrollment as a special federal voter. An application for registration and enrollment pursuant to this article shall be treated as an application for a special federal ballot for every election in which the applicant would be eligible to vote which is held through and including the next two regularly scheduled general elections held in even numbered years, including any run-offs which may occur.

47.     According to this section, Federal Post Card Applications must be "received by the state board of elections or any local board of elections on or before the twenty-fifth day next preceding any election in which such person would be entitled to vote or the last day of local registration for such election, whichever is later […]".

48.     As discussed below and above, Defendants are applying the Deadline Statute arbitrarily and unconstitutionally for applications submitted via electronic mail and received after October 9, 2020 and before 11:59 PM October 14, 2020.

**B.  Registration of Special Federal Voters Via Electronic Means**

49.     Under 52 U.S.C. §20302, each State "shall permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office."   To that end, 52 U.S.C. §20302(a)(6)(A) provides as follows:

in addition to any other method of registering to vote or applying for an absentee ballot in the State, establish procedures for absent uniformed services voters and Overseas voters to request by mail and ***electronically*** voter registration applications and absentee ballot applications with respect to general, special, primary, and runoff elections for Federal office […] (emphasis not in original).

50.     In contrast to the language and spirit of the federal statute, section 11-203 of the NYEL mandates that overseas voters – like Plaintiffs – physically mail their Federal Post Card Application.

51.     In August 2020 it became apparent that the Board was relying on Section 11-203 to disqualify hundreds of thousands of ballot applications for the sole reason that they were not physically mailed to the Board, but rather submitted via electronic mail.

52.     This posed a grave issue. At that time, thousands of overseas voters were confined to their homes and were unable to physically mail their registration application due to the COVID-19 global pandemic.

53.     In a letter dated August 26, 2020, several overseas voters, represented by Republicans Overseas Israel, an Israeli non-profit organization or *Amuta,* through the undersigned counsel, petitioned the Board to immediately cease and desist its arbitrary, unconstitutional and antiquated policy of denying Federal Post Card Applications submitted through electronic mail.

54.     The overseas voters pointed out to the Board the obvious: In the modern technologically advanced world we live in, coupled with a global pandemic that makes conventional mail all the more outdated and irrelevant, requiring physical "wet copies" of the Federal Post Card Applications makes little sense.

55.     The overseas voters claimed that the Board's continued reliance on section 11-203 of the NYEL to disqualify Federal Post Card Applications submitted by electronic mail contravenes the UOCAVA and is unconstitutional under the Supremacy Clause of the United States Constitution. U.S. CONST., Art. VI, Cl. 2.

56.     The overseas voters also pointed out that some boards of elections in counties outside the New York City metropolitan area are, in fact, processing Federal Post Card Applications from overseas voters submitted via electronic mail without requiring them to submit hardcopy originals.

57. On September 6, 2020, Defendant NYSBOE issued a response to the August 26, 2020 letter. In its letter, the NYSBOE distinguished between overseas voters who have been previously registered and those who are registering for the first time.

58. As for previously registered overseas voters, the NYSBOE clarified that they may request a ballot through an electronically transmitted (electronic mail or fax) Federal Post Card Application.

59. Regarding overseas voters who have never registered, the NYSBOE clarified that they too may request a federal ballot through an electronically transmitted (electronic mail or fax) Federal Post Card Application, subject, however, to the voter physically mailing "a signed application for registration signature purposes along with their ballot in order for the ballot to count."

**C. The Ambiguous Deadline for the Submission of Federal Post Card Applications**

60. According to the Deadline Statute, Federal Post Card Applications must be received "on or before the twenty-fifth day next preceding any election in which such person would be entitled to vote or the last day of local registration for such election, whichever is later […]"

61. In this case, the applicable date for calculating a deadline under the Deadline Statute is November 3, 2020, the date of the 2020 General Election.

62. The Federal Voting Assistance Program ("FVAP") is a voter assistance and education program established by the United States Department of Defense, in accordance with federal law, to ensure that members of the U.S. armed forces, their eligible family members, and U.S. citizens overseas are aware of their right to vote and have the tools to do so from the country where they are residing.

63.     According FVAP's New York segment of its website, Federal Post Card Applications by overseas voters must be received "*by October 14, 2020." The asterisk refers the reader to the following statement on the website:

**\*Registration: General election registration requests must be postmarked by October 9, 2020.**

Source: https://www.fvap.gov/new-york

64.     The FVAP's New York segment of its website does not distinguish between conventional mail and electronic mail.

65.     According to the NYSBOE's website, the deadline for the submission of Federal Post Card Applications has been set at October 9, 2020, twenty-five days before the November 3 election:

| 10/18/2020 | Military and Overseas Federal Voting \| NYS Board of Elections |
|---|---|
| **Date** | **Voter Registration** |
| Oct. 9 | Last day for a board of elections to receive registration application for Special Federal voter to be eligible to vote in general election. Sec. 11-202(1). |
| **Date** | **Requesting Your Ballot** |
| Oct. 9 | Last day for a board of elections to receive application for Special Federal voter for absentee ballot **by mail if NOT** previously registered. Sec. 11-202(1). |
| Oct. 27 | Last day for a board of elections to receive application for Special Federal voter for absentee ballot **by mail** if previously registered. Sec. 11-204(4). |
| **Date** | **Returning Your Ballot** |
| Nov. 3 | Last day to postmark ballot Special Federal return ballot. Must be received by the local board of elections no later than November 16th. Sec. 11-212. |

Source: https://www.elections.ny.gov/votingmilitaryfed.html

66.     NYSBOE's website likewise does not distinguish between submission of Federal Post Card Applications via conventional mail and submissions via electronic mail.

67.     In another part of the NYSBOE's website, NYSBOE states that pursuant to N.Y. Elec. Law §5-210(3), applications must be postmarked no later than **October 9, 2020** and received by a board of elections no later than **October 14, 2020** to be eligible to vote in the General Election:

## Voter Registration Deadlines

**November 3, 2020 General Election Deadlines**

MAIL REGISTRATION (N.Y. Election Law Section 5-210(3))
Applications must be postmarked no later than **October 9, 2020** and received by a board of elections no later than **October 14, 2020** to be eligible to vote in the General Election.

Source: https://www.elections.ny.gov/votingdeadlines.html

68.     It is this ambiguity and confusion that led Plaintiffs and thousands of other New York overseas voters to reasonably believe that submissions via electronic mail – where postmarks are inapplicable – can be received by the October 14, 2020 deadline.

## **FACTUAL ALLEGATIONS**

69.     On September 10, 2020, Israel became the country with the highest rate of COVID-19 infections per capita.

70.     On September 13, 2020, the Israeli government approved a 3-week country-wide lockdown, beginning Friday, September 18 at 2 PM, and ending on October 10.

71.     On October 13, the lockdown was extended for an additional week, until midnight, October 18, 2020.

72.     During this period, Plaintiffs were confined to their homes and were unable to go to a post office. Plaintiffs, therefore, decided to submit their Federal Post Card Applications via electronic mail.

73.     Prior to electronically mailing their Federal Post Card Applications to the Board, Plaintiffs reviewed the deadlines that appear on the website of the NYSBOE and FVAP.

74.     Plaintiffs reasonably believed that they were entitled to electronically mail their Federal Post Card Applications by October 14, 2020.

75.     On October 14, 2020, Plaintiff Hanna e-mailed the Richmond County Board of Elections her Federal Post Card Application. The Richmond County Board of Elections denied her application as untimely.

76.      On October 14, 2020, Plaintiff Naama e-mailed the Richmond County Board of Elections her Federal Post Card Application. The Richmond County Board of Elections denied her application as untimely.

77.     On October 14, 2020, Plaintiff Chizkiyahu e-mailed the Richmond County Board of Elections his Federal Post Card Application. The Richmond County Board of Elections denied his application as untimely.

78.     On October 12, 2020, Plaintiff Elozor e-mail the Rockland County Board of Election his Federal Post Card Application. Plaintiff Elozor has not received a response and has not been issued a ballot.

79.     On October 10, 2020, Plaintiff Chaya e-mailed the Rockland County Board of Election her Federal Post Card Application. Plaintiff Chaya has not received a response and has not been issued a ballot.

80.     On October 12, 2020, Plaintiff Basya e-mailed the Kings County Board of Election her Federal Post Card Application. Plaintiff Basya has not received a response and has not been issued a ballot.

81.     On October 11, 2020, Plaintiff Miriam e-mailed the Kings County Board of Election her Federal Post Card Application. Plaintiff Miriam has not received a response and has not been issued a ballot.

82.     On October 11, 2020, Plaintiff Naomi e-mailed the Kings County Board of Election her Federal Post Card Application. Plaintiff Naomi has not received a response and has not been issued a ballot.

83.     On October 11, 2020, Plaintiff Nechama e-mailed the Kings County Board of Election her Federal Post Card Application. Plaintiff Nechama has not received a response and has not been issued a ballot.

84.     On October 11, 2020, Plaintiff Yisrael e-mailed the Kings County Board of Election his Federal Post Card Application. Plaintiff Yisrael has not received a response and has not been issued a ballot.

85.     On October 13, 2020, Plaintiff Golda e-mailed the Kings County Board of Election her Federal Post Card Application. Plaintiff Golda has not received a response and has not been issued a ballot.

86.     On October 13, 2020, Plaintiff Jacob e-mailed the Kings County Board of Election his Federal Post Card Application. Plaintiff Jacob has not received a response and has not been issued a ballot.

87.     Notably, the election boards of *at least* two New York counties (Kings and Nassau) have been accepting Federal Post Card Application filed by e-mail between 12:00 AM October 10 and 11:59 PM October 14, 2020 on an *ad hoc* basis.

88.     On October 15, 2020, Plaintiffs, through Adv. Lawrence Marc Zell, Chairman of Republicans Overseas Israel, wrote an e-mail to Defendant Douglas Kellner, commissioner and co-chair of the NYSBOE requesting "that the NY State Board of Elections instruct all NY State county boards of election to accept special federal voter applications submitted by email by the October 14, 2020 deadline, provided that the special voters otherwise meet all other requirements for registration under New York Election Law."

89.     On the same day, Mr. Kellner responded via e-mail and denied the request, referring to the Deadline Statute.

90.     On October 19, 2020, Mr. Zell sent a follow-up e-mail to Mr. Kellner, requesting him and the Board to reconsider their position. Adv. Zell emphasized the arbitrariness of the purportedly set deadline and the implications this policy has on the constitutional rights of the Plaintiffs.

91.     On October 21, 2020, in a final effort to avoid litigation, Adv. Zell sent a copy of a draft complaint to Mr. Kellner, requesting again the Defendants "direct all county boards of election to accept their FPCA registration applications along with all the registration applications of all other similarly situated overseas voters and immediately to issue absentee ballots to our clients and all other similarly situated overseas voters […]". The response Adv. Zell received on the same day was that "New York law plainly sets the receipt deadline for a special federal registration application at 25 days before the election.  See N.Y. Election Law § 11-202 (1) (a). This is the same deadline for voter registration applications from all other voters."

## COUNT I

**Defendants Violated Plaintiffs' Rights Under the First Amendment of the United States Constitution**

92.     Plaintiffs incorporate by reference all the allegations set forth above.

93.     The First Amendment provides that "Congress shall make no law [...] abridging the freedom of speech."

94.     It is well established that voting implicates First Amendment rights.

95.     The First Amendment applies to the State of New York under the Due Process Clause of the Fourteenth Amendment.

96.     A statutory framework that completely disenfranchises thousands of voters "amounts to a severe burden on the right to vote." *Florida Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1257 (N.D. Fla. 2016), *cited by* *Jones v. United States Postal Serv*., 2020 WL 5627002, at *24 (S.D.N.Y. Sept. 21, 2020) (discussing a First Amendment challenge to ballot mailing procedures).

97.     When there is a severe burden on the right to vote, courts must review the burden under strict scrutiny and will reject the burden unless it is necessary to further a compelling government interest.

98.     Here, the burden on Plaintiffs is severe because Plaintiffs' Federal Post Card Applications (as well as those of thousands of similarly situated voters) have been rejected by N.Y. county election boards,  thus preventing them from exercising their right to vote and, thus, violating the United States Constitution in general and the First Amendment in particular.

99.     Accordingly, Defendants' interpretation and application of the Deadline Statute is subject to strict scrutiny. *See* *Jones v. United States Postal Serv*. *supra* and *Gallagher v. New York State Bd. of Elections*, 2020 WL 4496849, at *12 (S.D.N.Y. Aug. 3, 2020) (applying strict scrutiny to alleged infringements of voting rights in connection with mail-in ballots).

100.     Therefore, Defendants' interpretation and application of the Deadline Statute must be rejected unless it is necessary to further a compelling government interest.

101.     Defendants' application of the Deadline Statute is not necessary to further any government interest, let alone a compelling one.

102.     Ostensibly, the government interest here is to timely receive Federal Post Card Applications from overseas voters so as to assure that the ballots are issued and received by November 3, 2020.  However, that interest is furthered when an application is received via electronic mail by the October 14, 2020 deadline. Defendants have permitted conventional mail-

in applications to arrive by the October 14, 2020 deadline (subject to the postmark requirement). Hence, "necessity" cannot justify Defendants' insistence that electronic mail be treated differently than conventional mail.

103.    Moreover, the government interest in receiving application on time may be a legitimate government interest, but it certainly is not a "compelling" or even "important" government interest and cannot serve to justify the disqualification of Plaintiffs' and thousands of other Federal Post Card Applications. The fact that Defendants have already allowed conventional mail-in applications to arrive no later than October 14, 2020 (subject to the postmark requirement) undermines any assertion that an October 9, 2020 deadline – as applied to electronic applications – constitutes a "compelling" or "important" government interest.

104.    In addition, the UOCAVA undermines any claim regarding the "necessity" of Defendants' application of the Deadline Statute. The UOCAVA also undermines and claim regarding the government interest that *may* be at stake here. The purpose of the UOCAVA is to ensure that overseas citizens are aware of their right to vote and have the tools and resources to successfully do so from anywhere in the world. If there is any doubt how to apply the Deadline Statue towards electronic mail, the UOCAVA should tilt the balance in favor of an application that would lead to the counting of more votes, not less.

105.    Lastly, the COVID-19 global pandemic must be considered in reviewing the propriety of Defendants' application of the Deadline Statute. The United States, New York, Israel and most of the planet are now threatened by an unprecedented danger which affects the health and lives of individuals all across the globe.  As we mentioned above, Defendants and other New York government bodies have already modified existing voting laws and regulations in order to allow for absentee voting in order to adhere to and promote social distancing.

106.    Defendants' application of the Deadline Statute does not properly take into consideration the constraints and hardships created by the pandemic.  COVID-19 has led thousands to opt for electronic mail instead of traditional mail. However, by applying the Deadline Statute to disqualify Plaintiffs' and thousands of other registration applications merely because these forms arrived after October 9 but before the October 14 deadline, Defendants have improperly ignored the current health crisis, forcing Plaintiffs and others like them to forego their fundamental right to vote.  If there is any doubt how to apply the Deadline Statue towards electronic mail, COVID-19 should tilt the balance in favor of an interpretation that would lead to the counting of more votes, not less.

107.    Accordingly, the Deadline Statute, as applied by Defendants' to registration applications submitted via electronic mail, fails to pass muster under the strict scrutiny analysis.

108.    Even assuming that some lesser form of scrutiny applied here, the result will be the same. Intermediate scrutiny also demands some showing of tailoring and necessity. As noted above, Defendants will not be able to provide any logical reason to distinguish between conventional mail and electronic mail. Moreover, the government interest here is, at the most, legitimate and cannot serve as a justification to disqualify thousands of Federal Post Card Applications that were submitted via electronic mail between October 9 and October 14, 2020.

109.    Thus, it does not matter whether Defendants' application of the Deadline Statute is evaluated under strict scrutiny or a more intermediate level of scrutiny; the result is the same.

## COUNT II

**Defendants Violated Plaintiffs' Right to Equal Protection under the Fourteenth Amendment**

110.    Plaintiffs incorporate by reference all the allegations above.

111.    "Equal protection [...] require[s] the uniform treatment of" similarly situated individuals. _Reynolds v. Sims_, 377 U.S. 533, 565 (1964). "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." _Bush v. Gore_, 531 U.S. 98, 104 (2000) (_per curiam_). Once citizens have been granted the right to vote, the government "may not, by later arbitrary and disparate treatment, value one person's vote over that of another." _Id_. at 104-05.

112.    In _Gallagher v. New York State Board of Elections_, _supra_ at 19, this Court relied on _Bush v. Gore_ to hold that plaintiffs had demonstrated a likelihood of success on their equal protection claim where due to the "inconsistent application of postmarks to absentee ballots" by USPS, the primary election "suffered from a lack of 'specific standards to ensure [...] equal application' of [the state statute's] postmark rule."

113.    Here, Defendants' interpretation and application of the Deadline Statute suffer from a lack of standards to ensure its equal application.

114.    As discussed above, Defendants have applied two different deadline requirements for similarly situated individuals, without any intelligible grounds. Thousands (if not more) of conventional mail-in registration applications can be received by Defendants after October 9, 2020, whereas registration applications submitted via electronic mail are deemed automatically invalid. In short, Defendants are valuing one person's vote over that of another.

115.    Moreover, _at least_ two New York counties (Kings and Nassau) who have been accepting applications e-mailed between 12:00 AM October 10 and 11:59 PM October 14, 2020 on an _ad hoc_ basis. This inconsistent application of the Deadline Statute violates the Fourteenth Amendment's equal protection guaranty.

116.    The "one person, one vote standard [...] enjoys the doctrinal privilege of being one of the few Equal Protection Clause violations actionable without a showing of discriminatory

intent." Grant M. Hayden, *The False Promise of One Person, One Vote*, 102 MICH. L. REV. 213, 222 (2003), cited in *Jones v. United States Postal Serv.*, *supra* at 18. Thus, it makes no difference whether Defendants' application of the Deadline Statute is motivated by discriminatory intent or not.[2]

117.    The assertions regarding the UOCAVA and COVID-19 raised above in Count I are equally applicable to this Equal Protection challenge and are incorporated by reference.

118.    Accordingly, Defendants' interpretation and application of the Deadline Statute to electronic mailed Federal Post Card Applications is unconstitutional under the Equal Protection Clause.

## COUNT III

### Unconstitutional Vagueness

119.    Plaintiffs incorporate by reference the allegations above.

120.    A law may be deemed unconstitutional as unduly vague, in violation of due process.

121.    Specifically, a statute is unconstitutionally vague if its terms (1) fail to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement.

122.    Where, as here, the law interferes with fundamental rights, a more stringent vagueness test must apply.

---

[2] Although we note that some boards of elections in counties outside the New York City metropolitan area are in fact processing applications from overseas voters received after October 9, 2020 but before October 14, 2020. If this is so, there may be reason to believe that the administrative practice followed by Defendants – at least in the New York City metropolitan area – may be politically motivated and discriminatory inasmuch as the vast majority of American-Israelis resident in Israel have historically voted for Republican candidates in U.S. general presidential elections. We reserve the right to assert and prove this allegation during the course of trial.

123.    Here, the Deadline Statute, as applied by Defendants, suffers from extreme ambiguity. The statute sets the deadline for the receipt of Federal Post Card Applications "on or before the twenty-fifth day next preceding any election." However, Defendants have permitted registration applications to be received by October 14, 2020, so long that they are postmarked by October 9, 2020.

124.    To make matters worse, FVAP – a federal agency – has publicly posted on its website that Federal Post Card Application must be received by October 14, 2020, without making any distinction between electronic submissions and conventional modes of mail.

125.    Adding to this confusion are the actions of at least two New York counties (Kings and Nassau) who have been accepting applications e-mailed between 12:00 AM October 10 and 11:59 PM October 14, 2020 on an *ad hoc* basis.

126.    The language the Deadline Statute, coupled with Defendants and other agencies' application of the statute, warrant the conclusion that the statute, as applied to Plaintiffs, in unconstitutionally vague: people of reasonably intelligence cannot understand the exact deadline in the statute and the statute has encouraged Defendants to apply a double standard.

127.    As a result, thousands of otherwise eligible overseas voters' registrations are being tossed away.

### COUNT VI

### Civil Action for Deprivation of Rights Under Color of Law (42 U.S.C. §1983)

128.    Plaintiffs incorporate by reference the allegations above.

129.    42 U.S.C. §1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws is liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress […]

130.    Defendants are "persons" who can be sued under Section 1983.

131.    The Defendants' acted under the color of law: Defendants' interpretation and application of the Deadline Statute amounts to government action "under color" of a statute.

132.    As asserted above, Plaintiffs were deprived of rights, privileges, and immunities secured by the Constitution and laws. These rights include the fundamental right to vote, and the right to equal protection which are protected by the United States Constitution.

133.    The deprivation of these rights was caused by Defendants and their erroneous interpretation and application of the Deadline Statute.

134.    Plaintiffs have suffered damages in an amount to be proven at trial.

## JURY TRIAL

135.    Plaintiffs demand a jury trial as to all claims that are triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court

(a) Issue a declaratory judgment that Defendants' actions have violated Plaintiffs' rights under the United States Constitution.

(b) Issue a mandatory preliminary and permanent injunction, ordering Defendants to interpret and apply the Deadline Statute to electronic mail submissions so that those applications received no later than the October 14, 2020 deadline will be counted.

(c) Enter an order requiring Defendants to accept Plaintiffs' Federal Post Card Applications, submitted by e-mail by 11:59 PM, October 14, 2020, together with

the Federal Post Card Applications filed by all other similarly situated special federal voters and to issue Plaintiffs and such other special federal voters absentee ballots enabling them to vote for federal offices in the General Election of November 3, 2020, provided that the Plaintiffs and such other special voters otherwise meet all other requirements for registration under New York Election Law;

(d) Enter an order requiring Defendants to instruct all New York State County Boards of Election to accept all Federal Post Card Applications submitted by special federal voters by e-mail by 11:59 PM, October 14, 2020, and immediately to issue absentee ballots to such special federal voters, provided that such special voters otherwise meet all other requirements for registration under New York Election Law;

(e) Enter an order required Defendants to accept any FWAB[3] ballots sent in by the Plaintiffs or others similarly situated, provided that the ballots comply with the requirements of NY law.

(f) Grant Plaintiffs compensatory damages in an amount to be proven at trial;

(g) Grant Plaintiffs their attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. §1988;

(h) Grant such other and further relief that the Court may determine to be necessary and proper.

---

[3] "FWAB" stands for a "Federal Write-In Absentee Ballot." A FWAB is an alternative ballot for overseas and uniformed services voters whose ballots are late.  Under the circumstances of this case, Plaintiffs and others similarly situated completed and filed a FWAB because Defendants refused to issue them ballots. Therefore, as part of the relief, we request that Defendants accept FWABs from all applicants who submitted their FPCAs by midnight October 14, 2020.

Date: October 26, 2020.

/s/ Noam Schreiber

_____

Noam Schreiber, Esq.
Jeffrey Michels, Esq.
L. Marc Zell, Esq.,
*of counsel (Not Admitted in New York)*
**ZELL & ASSOCIATES**
**INTERNATIONAL ADVOCATES LLC**
1345 Ave. of the Americas,
2nd floor,
New York, NY 10105
E-mail: Schreiber.noam@gmail.com

*Counsel for Plaintiffs*