UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
HANNA ABIGAIL DEUTSCH, et al.,                                :
                                    Plaintiffs,               :
                                                              :      20 Civ. 8929 (LGS)
                -against-                                     :
                                                              :      OPINION AND ORDER
NEW YORK STATE BOARD OF                                       :
ELECTIONS, et al.,                                            :
                                    Defendants.               :
                                                              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs, twelve prospective United States voters residing in Israel, seek an injunction requiring New York state county boards of election to accept their voter registration applications for the upcoming November 3, 2020, general election. Plaintiffs emailed their applications to registration authorities after the October 9, 2020, deadline specified by New York law. Plaintiffs claim they have been disenfranchised because New York law permits county election boards to accept applications received through traditional mail by October 14, 2020, as long as those applications were postmarked by October 9, 2020.

      Plaintiffs' motion is denied because New York law treats all prospective voters equally, regardless of whether they apply to vote via email or traditional mail. All individuals seeking voter registration in New York were required to submit their applications by October 9, 2020. All individuals who failed to send their applications by that date may not register to vote. That deadline is clearly specified in New York's election law and on the New York State Board of Elections' website.

      A law setting a reasonable deadline by which voters must register for an election disenfranchises no one, but instead ensures the orderly, accurate and reliable administration of

elections.  Indeed, registration deadlines of similar length are routinely upheld by courts nationwide, in recognition of the established principle that voters must take timely action to comply with reasonable state election restrictions.  Accordingly, New York's requirement that voters submit a registration approximately three and a half weeks before the election places no undue burden on Plaintiffs' rights.

As further explained below, Plaintiffs' motion for temporary and permanent injunctive relief is denied.  Defendants' motion for summary judgment as to Plaintiffs' First Amendment, equal protection and § 1983 claims is granted.

I.   BACKGROUND

The New York Election Law ("NYEL") delegates administration of New York elections to fifty-eight local county boards of election, which process voter registration applications, register voters, and send and count absentee ballots.  NYEL §§ 1-100 *et seq.*  The Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20102 *et seq.* ("UOCAVA") is the federal law governing registration and voting for "Special Federal Voters" -- United States citizens living outside the United States, as well as their children.  The UOCAVA is also referred to as the "Post Card" law, because it uses an official "Federal Post Card Application" form ("FPCA").  An FPCA serves two functions.  It may be used as a registration form for overseas voters, and it may be used to apply for an absentee ballot.  Generally, a Special Federal Voter registers to vote by sending an FPCA to the appropriate local state election board.  If the applicant meets statutory requirements, the local board sends an absentee ballot by email, fax or mail.  The voter must send the absentee ballot and a hard copy of the registration application to the board, postmarked by the date of the election in question.

The UOCAVA places requirements on state election authorities regarding procedures for Special Federal Voters. In New York, those requirements are implemented by Articles 10 and 11 of the New York Election Law ("NYEL"). *See* N.Y. Elec. Law. § 11-200 *et seq.* The New York State Board of Elections ("NYSBOE") permits Special Federal Voters to submit their FPCAs by conventional mail, fax or email. Special Federal Voters like Plaintiffs, who have never resided in the United States, may register using their parent's New York address. NYEL § 11-200(1-a).

NYEL § 11-202(1)(a) (the "Deadline Provision") specifies that Special Federal Voters may vote "by application received by the state board of elections or any local board of elections on or before the twenty-fifth day next preceding any election in which such person would be entitled to vote . . . ." The relevant registration deadline for the November 3, 2020, general election ("General Election") is twenty-five days prior, or October 9, 2020. This date matches the date by which non-Special Federal Voters must submit registration applications in New York: (i) NYEL § 5-210(3), which governs traditional mail-in registrations, specifies that a voter may not be registered unless their application form is postmarked by twenty-five days before the election and (ii) NYEL § 5-212(7), which governs online registration through the New York Department of Motor Vehicles, requires submission of completed applications by twenty-five days before the election.

NYEL § 5-210(3) also specifies that non-Special Federal Voter registration applications may be processed by county election boards if received no later than twenty days before the election. So, as relevant to the General Election, non-Special Federal Voter applications submitted pursuant to § 5-120(3) must be (i) postmarked by October 9, 2020, and (ii) received by October 14, 2020.

Consistent with NYEL § 11-202(1)(a), the portion of the NYSBOE's website addressing Special Federal Voters states that October 9, 2020, is "[t]he last day for a board of elections to receive [an] application for [a] Special Federal voter for absentee ballot by **mail if NOT** previously registered.  Sec. 11-202(1) [the Deadline Provision]."  Consistent with NYEL § 5-210(3), the portion of the NYSBOE website addressing mailed-in registrations per § 5-210(3) states that "Applications must be postmarked no later than **October 9, 2020** and received by a board of elections no later than **October 14, 2020** to be eligible to vote in the General Election."  The website of the Federal Voting Assistance Program ("FVAP"), a federal organization responsible for promulgating information to assist overseas voters, states that New York registration requests for overseas voters like Plaintiffs must be "Received by* October 14, 2020."  The asterisk notes, "General election registration requests must be postmarked by October 9, 2020."

The twelve Plaintiffs, who reside in Israel and have never lived in the United States, are children of United States citizens who previously lived in New York.  On September 18, 2020, Israel entered a mandatory lockdown due to a spike in COVID-19 cases.  During that lockdown, which lasted until October 18, 2020, Plaintiffs were confined to their homes.  Unable to visit the post office, Plaintiffs elected to email their FPCAs to their county boards of election.  After reviewing the deadlines on the NYSBOE and FVAP websites, Plaintiffs concluded that they could email their FPCAs by October 14, 2020.  Plaintiffs emailed their FPCAs between October 10 and 14, 2020.  Several received rejections from their local county board of election due to not sending the FPCA by October 9, as required by the Deadline Provision, while others have received no response.  Plaintiffs, through counsel, corresponded with the NYSBOE from

4

October 15, 2020, to October 22, 2020.  On October 22, 2020, the NYSBOE declined to accept Plaintiffs' emailed FPCAs, citing the October 9 cutoff established by the Deadline Provision.

On October 26, 2020, Plaintiffs filed their Complaint against:  the NYSBOE; Peter S. Kosinski, Andrew Spano and Douglas A. Kellner, Commissioners of the NYSBOE; Todd Valentine and Robert Brehm, NYSBOE Co-Executive Directors; and Governor Andrew M. Cuomo, all in their official capacities (collectively "Defendants").  The Complaint pleads four causes of action:  that (i) the statutory framework of the NYEL violates the First Amendment right to free speech by removing Plaintiffs' right to vote; (ii) the Deadline Statute violates the Fourteenth Amendment's Equal Protection Clause, either because it imposes different receipt dates for physically-mailed applications and emailed FPCAs or because some county boards of election, but not others, have accepted FPCAs emailed after October 9; (iii) the Deadline Statute is unconstitutionally vague as applied to Plaintiffs; and (iv) the alleged loss of voting rights and equal protection violations also create a right to monetary damages under 42 U.S.C. § 1983. Plaintiffs seek:  (i) a declaratory judgment that their rights have been violated; (ii) preliminary and permanent injunctions requiring county boards of election to accept all FPCAs emailed on or before October 14, 2020; (iii) immediate issuance of absentee ballots to voters who emailed FPCAs on or before October 14, 2020, as well as acceptance of any Federal Write-In Absentee Ballots sent by such individuals after their FPCAs were rejected; and (iv) compensatory damages, attorneys' fees and costs.

Alongside their Complaint, Plaintiffs submitted an Emergency Motion for Preliminary Injunction, seeking injunctive relief only on the basis of the alleged First Amendment and equal protection violations.  The Court merged the requests for preliminary and permanent injunctive relief into a single application, deeming Plaintiffs' emergency motion to be both a motion for a

preliminary injunction and a motion for summary judgment seeking permanent injunctive relief. Defendants oppose the emergency motion and cross-move for summary judgment.

## II.    DISCUSSION

### A.    Summary Judgment[1]

#### 1.    Legal Standard

When parties cross-move for summary judgment, a court must analyze the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (internal quotation marks omitted). Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts

---

[1] Defendants do not dispute that Plaintiffs have standing to bring this action. Plaintiffs must have standing to bring their dispute to federal court. *Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016)). To establish standing, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Moya v. United States Dep't of Homeland Sec.*, 975 F.3d 120, 129 (2d Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1547). Plaintiffs have suffered an injury: "[t]he right to vote is fundamental" and Plaintiffs will be unable to vote in the upcoming General Election under the challenged statute. *United States v. Decastro*, 682 F.3d 160, 167 (2d Cir. 2012); *accord Jones v. United States Postal Serv.*, No. 20 Civ. 6516, 2020 WL 5627002, at *12–13 (S.D.N.Y. Sept. 21, 2020). That injury is traceable to Defendants' conduct, as Plaintiffs' inability to register to vote, and concomitant loss of the ability to cast a ballot in the General Election, is a direct result of Defendants' application of the Deadline Provision. Finally, a favorable decision would redress Plaintiffs' complained-of injury, as they would be permitted to cast a ballot in the General Election. Accordingly, Plaintiffs have satisfied the standing requirement.

of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Federal Trade Commission v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (internal quotation marks omitted). "Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013); *accord Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 323 (S.D.N.Y. 2019).

### 2. Challenges to State Election Laws

States retain the power to regulate their own elections. *See United States v. Smilowitz*, 974 F.3d 155, 159 n.7 (2d Cir. 2020) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). The Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (collecting cases); *see also Yang v. Kellner*, 458 F. Supp. 3d 199, 217 (S.D.N.Y.), *aff'd sub nom. Yang v. Kosinski*, 805 F. App'x 63 (2d Cir. 2020) (summary order), *and aff'd sub nom. Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020).

Constitutional challenges to specific provisions of a state's election laws are governed by the framework set forth in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983), and *Burdick*, 504 U.S. 428. *See Jones v. United States Postal Serv.*, No. 20 Civ. 6516, 2020 WL 5627002, at *14 (S.D.N.Y. Sept. 21, 2020). Under the *Anderson-Burdick* framework, courts must first "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" and then "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule," considering "the extent to which those interests make it necessary to burden the plaintiff's

rights." *Anderson*, 460 U.S. at 789; *accord Gallagher v. New York State Bd. of Elections*, No. 20 Civ. 5504, 2020 WL 4496849, at *15 (S.D.N.Y. Aug. 3, 2020).

For severe burdens on plaintiffs' rights, the court must apply additional scrutiny to the challenged election law. Specifically, the law must meet the "strict scrutiny" test, which requires the law to be "narrowly drawn to advance a state interest of compelling importance." *Libertarian Party of Connecticut v. Lamont*, No. 20-2179, 2020 WL 5849341, at *2 (2d Cir. Oct. 2, 2020) (quoting *Burdick*, 504 U.S. at 434); *accord Jones*, 2020 WL 5627002, at *14. By contrast, if the challenged election law imposes "reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Libertarian Party of Connecticut*, 2020 WL 5849341, at *2 (quoting *Burdick*, 504 U.S. at 343); *accord Jones*, 2020 WL 5627002. "Review in such circumstances will be quite deferential, and we will not require elaborate, empirical verification of the weightiness of the State's asserted justifications. Nonetheless, in cases . . . where the burden imposed by the law is non-trivial, we must weigh the State's justification against the burden imposed." *Libertarian Party of Connecticut*, 2020 WL 5849341, at *2 (internal quotation marks omitted).

### 3. Plaintiffs' First Amendment Claims

In analyzing Plaintiffs' claims of a First Amendment violation, the first step is to determine whether application of the Deadline Provision imposes a "severe restriction[]" on Plaintiffs' right to vote, thus mandating strict scrutiny under the *Anderson-Burdick* framework. *Id.* at *2. The Deadline Provision does no more than establish a deadline for certain voters to register to vote. It sets a time by which Special Federal Voters must send their registration applications to the appropriate state election authorities. In that regard, it is no different from

many other election laws designed to ensure fair and efficient administration of election procedures. "[T]he State is certainly justified in imposing some reasonable cutoff point for registration or party enrollment, which citizens must meet in order to participate in the next election." *Rosario v. Rockefeller*, 410 U.S. 752, 760 (1973); *see also Burdick*, 504 U.S. at 438 (stating that voters must "act in a timely fashion if they wish to express their views in the voting booth."). In *Rosario*, the Supreme Court found that New York's primary election registration cutoffs of eight and eleven months did not severely burden the right to vote. *Rosario*, 410 U.S. at 760–62. Since *Rosario*, courts nationwide have routinely upheld state laws requiring voters to register to vote three to four weeks before an election, as the Deadline Provision does. *See Barilla v. Ervin*, 886 F.2d 1514, 1522 (9th Cir. 1989), *overruled on other grounds, Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996) (collecting cases); *Democracy North Carolina v. North Carolina State Bd. of Elections*, No. 20 Civ. 457, 2020 WL 4484063, at *38–40 (M.D.N.C. Aug. 4, 2020) (noting that "courts routinely uphold voter registration deadlines as constitutional burdens on the right to vote" and concluding that a twenty-five day registration deadline did not disadvantage voters even in light of the ongoing COVID-19 pandemic); *Diaz v. Cobb*, 541 F. Supp. 2d 1319, 1333, 1335–39 (S.D. Fla. 2008) (in upholding twenty-nine day registration deadline, noting that such deadlines promote "certainty and reliability" in the election process during the "whirlwind atmosphere that precedes an election"); *see also Arizona Democratic Party v. Reagan*, No. 16 Civ. 03618, 2016 WL 6523427, at *9 (D. Ariz. Nov. 3, 2016) (finding no severe burden when plaintiffs claimed to be disenfranchised by placement of a registration deadline on a holiday, noting "the critical difference between regulations that categorically deny the right to vote and those which merely require an applicant to take some action to satisfy reasonable registration requirements"). As such, Plaintiffs have not established

that the Deadline Provision imposes a sufficiently severe restriction on the right to vote to warrant strict scrutiny.

Instead, the Deadline Provision is a routine and "reasonable, nondiscriminatory restriction[] upon the First and Fourteenth Amendment rights of voters." *Libertarian Party of Connecticut*, 2020 WL 5849341, at *2 (quoting *Burdick*, 504 U.S. at 343).  Plaintiffs do not dispute that Defendants have a legitimate interest in ensuring orderly, fair and efficient procedures for the election of public officials by setting a single date by which registration applications -- in the various forms permitted by the NYEL -- must be sent to local election boards.  Against that interest, Plaintiffs bear only a slight burden -- the requirement to fill out a single form and email it to New York's election authorities no later than twenty-five days before the election.  Weighing Plaintiffs' burden against the state's interest, New York's interests "are generally sufficient to justify the restriction[]." *Id.* (internal quotation marks omitted).

Plaintiffs nonetheless claim that the Deadline Provision imposes a severe burden warranting strict scrutiny because it "completely disenfranchises thousands of voters."  That observation is true of any voter registration deadline.  Plaintiffs cite no authority stating that registration deadlines impose a severe or unwarranted burden simply because they prohibit voting by individuals who register late.  Instead, Plaintiffs cite cases in which courts found a severe burden because of natural disasters and the ongoing COVID-19 pandemic.  *See Jones*, 2020 WL 5627002, at *24, 28 (S.D.N.Y. Sept. 21, 2020) (enjoining United States Postal Service policies that operated to prevent processing of mail-in ballots during the pandemic); *Gallagher*, 2020 WL 4496849, at *16 (applying strict scrutiny to a provision of the NYEL requiring mail-in primary ballots to be postmarked due to the United States Postal Service's failure to postmark many ballots during the pandemic); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1257

(N.D. Fla. 2016) (applying strict scrutiny to a Florida voting statute that did not permit extension of a registration deadline for emergencies when hundreds of thousands of voters could not timely register following a hurricane evacuation).  Those cases are different from this one because Plaintiffs do not suggest that the pandemic prevented them from emailing their registrations by the October 9 deadline, or that the pandemic otherwise caused their alleged disenfranchisement by application of the Deadline Provision.  Plaintiffs instead note that they could not send their FPCAs by *physical* mail due to the lockdown in Israel.

In response to the Court's Order directing them to provide an explanation and evidentiary basis for their failure to email their FPCAs by the deadline, Plaintiffs merely reiterate their contentions that they understood the guidance on the FVAP and NYSDOE website to allow emailed FPCAs up to October 14.  The portion of NYSDOE website titled "DEADLINES FOR OVERSEAS (FEDERAL) VOTERS FOR 2020 GENERAL ELECTION (NOVEMBER 3)" specifies that October 9 was the "[l]ast day for a board of elections to receive application for Special Federal voter for absentee ballot **by mail if NOT** previously registered," and cites the Deadline Provision.  That portion of the website plainly does not permit submission of FPCAs later than October 9.  The portion of the NYSBOE website for non-Special Federal Voters, titled "MAIL REGISTRATION (N.Y. Election Law Section 5-210(3))" specifies that "[a]pplications must be postmarked no later than **October 9, 2020** and received by a board of elections no later than **October 14, 2020** to be eligible to vote in the General Election."  On its face, that portion of the website applies to voters registering by mail pursuant to NYEL § 5-210(3), rather than Special Federal Voters like Plaintiffs who might register by email.  As to the FVAP website, FVAP is not a Defendant in this case, and NYSBOE does not control FVAP's website. Regardless, the FVAP website, like the NYSBOE website, states that registration applications

11

must be postmarked by October 9 and received by October 14.  These websites consistently state that the October 9 deadline is the same for all prospective New York voters.  *See* NYEL §§ 5-210(3), 5-212(7), 11-202(1)(a).

Plaintiffs' arguments on this point boil down to an assertion that they were confused by the two websites, because they (i) believed the portion of the NYSBOE website relevant to applications under § 5-210(3) applied to them and (ii) did not believe the portion of the NYSBOE website requiring Special Federal Voter applications be received by October 9 applied to them.  Their confusion does not mean that their misperception is widespread and that the Deadline Provision, and the statutory scheme of which it is a part, promote widespread voter disenfranchisement.  Of the twelve named Plaintiffs, only three submitted sworn statements that they interpreted the FVAP and NYSBOE websites as permitting them to email FPCAs up to October 14.  And although Plaintiffs proffer attorney argument and information-and-belief pleading that "thousands of similarly situated U.S. citizens around the world" likewise understood the registration deadline as they did, they provide no basis for that assertion sufficient to defeat a summary judgment motion.  *See Moses*, 913 F.3d at 305 ("mere speculation or conjecture as to the true nature of the facts" cannot overcome a motion for summary judgment).  Because there is no dispute of material fact as to Plaintiffs' First Amendment claims, Defendants are entitled to judgment as a matter of law.

### 4. Plaintiffs' Equal Protection Claims

The Fourteenth Amendment's Equal Protection Clause prohibits states from "deny[ing] to any person within [their] jurisdiction the equal protection of the laws."  U.S. CONST. amend XIV, § 1.  It "is essentially a direction that all persons similarly situated should be treated alike."  *Lanning v. City of Glens Falls*, 908 F.3d 19, 29 (2d Cir. 2018) (quoting *City of Cleburne v.*

*Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  In election law disputes, "the right to vote is protected in more than the initial allocation of the franchise.  Equal protection applies as well to the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104 (2000) (per curiam).  The government may not, by "arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104–05.

Plaintiffs first claim that they are subject to disparate treatment in violation of the Equal Protection Clause because their emailed FPCAs must have been sent and -- due to the rapidity of email received -- by October 9.  Plaintiffs note that physical mail applications must be received by October 14.  That difference, according to Plaintiffs, creates harmful differential treatment because "Defendants have applied two different deadline requirements for similarly-situated individuals . . . valuing one person's vote (*i.e.*-those using conventional mail) over that of another (*i.e.*- those using electronic mail)."  This argument is unpersuasive because the Deadline Provision, and the NYEL more generally, do not impose different deadlines on email and physical-mail applicants.  To register for the General Election, all prospective New York voters were required to send their registration applications by October 9.[2]  That local election boards may accept physically-mailed applications up to October 14 does not create a separate burden on email applicants like Plaintiffs, nor does it result in differential treatment of their applications.  A physical-mail application arriving after October 9 will still be rejected under the NYEL if it is not postmarked by October 9.  That is the same deadline applied to Plaintiffs' emailed FPCAs.  Accordingly, this equal protection theory fails as a matter of law.

---

[2] The NYEL contains exceptions to this deadline for newly discharged military members and new citizens unable to register by the deadline, neither of which are at issue in this case.  NYEL § 5-210(4).

13

Plaintiffs' other claim under the Equal Protection Clause is premised on their assertion that two county election boards in New York have accepted emailed FPCAs after October 9, while others have rejected such FPCAs, resulting in "arbitrary and disparate treatment" of overseas voters based on where they happen to be qualified to apply.  *Gallagher*, 2020 WL 4496849, at *18 (quoting *Bush*, 541 U.S. at 104–05); *see also Jones*, 2020 WL 5627002, at *22 ("[A]n equal protection violation occurs when arbitrary disparities in voting mechanisms make it less likely that voters in certain areas will cast votes that count.").  Initially, Plaintiffs offered an attorney affidavit and information-and-belief pleading to support this claim.  Following the Court's order to provide any additional evidentiary basis, Plaintiffs provided emails between the Kings County Board of Elections and a Special Federal Voter in Israel.  That voter's FPCA was received by email on October 14.  The Kings County Board of Elections issued a ballot on October 16.  On October 27, the board emailed the voter, stating that the application "was processed in error," that he had "no previous []registration on file" and that his registration had been cancelled.  Plaintiffs also submit an attorney letter asserting counsel's awareness of "many cases" of overseas applicants who filed late FPCAs and received no response from local election officials. The letter also describes several individuals whose emailed FCPAs were processed after October 14 but who did not consent to disclosure of their identities in this case.

At the Court's request, Defendants likewise submitted an affidavit regarding any processing of emailed FPCAs after the statutory deadline.  Defendants state that the Deadline Provision has not changed for approximately twelve years, that county boards of election are aware that electronic filings must occur by the date specified in the Deadline Provision and that they are not aware of any election board policy to process emailed FPCAs after October 9, 2020.

14

Considering the parties' submissions, no reasonable jury could find widespread confusion or inconsistency among county election boards as to the deadline for emailed FPCAs. Nor is there evidence that the Deadline Provision is being applied differentially in either a systematic or haphazard manner. That some unidentified individuals report FPCA processing after the deadline, and that one county board erroneously processed a late FPCA and then issued a correction, does not create a "profound and troubling lack of standards and uniformity" with regard to county election boards' handling of emailed FPCAs. *Jones*, 2020 WL 5627002, at *22. Accordingly, Defendants are entitled to summary judgment on this equal protection theory.

**B.      Plaintiffs' Requests for Preliminary and Permanent Injunctions**

To be entitled to a preliminary injunction, Plaintiffs must "demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016); *accord Gallagher*, 2020 WL 4496849, at *14. "The requirements for a permanent injunction are 'essentially the same' as for a preliminary injunction, except that the moving party must demonstrate 'actual success' on the merits." *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)); *accord Alpha Capital Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 338 (S.D.N.Y. 2020).

For the reasons above, Defendants cannot prevail on the merits of their First Amendment and equal protection claims, and so permanent injunctive relief is not warranted. They likewise cannot demonstrate a likelihood of success on the merits for a preliminary injunction, as they have not made a "clear showing" that they are entitled to the "extraordinary remedy" they seek.

*Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 213 (2d Cir. 2014) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

    **C.**    **Plaintiffs' Claims Under 42 U.S.C. § 1983**

Plaintiffs allege they are entitled to fees and monetary damages under 42 U.S.C. § 1983, which permits a party whose Constitutional rights were violated by a state official to sue such officials. *See Jimenez v. City of New York*, No. 18 Civ. 7273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020). In support of their § 1983 claim, Plaintiffs rely on the alleged violations of their right to vote and equal protection rights. As described above, Plaintiffs have not established violations of these Constitutional rights. Accordingly, the § 1983 claims fail as a matter of law.[3]

**III.**    **CONCLUSION**

For the reasons stated above, Plaintiffs' motion for temporary and permanent injunctive relief is DENIED. Defendants' motion for summary judgment as to Plaintiffs' First Amendment, equal protection and § 1983 claims is GRANTED. The Clerk of Court is respectfully directed to close the entries at Docket Nos. 3 and 28.

Dated: October 30, 2020
       New York, New York

*[signature]*
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Complaint also asserts an additional cause of action -- that the Deadline Provision is unconstitutionally vague. That claim is not addressed in this opinion as neither party briefed the issue or sought leave to brief it, even after the Court merged Plaintiffs' applications for preliminary and permanent injunctive relief. Plaintiffs' emergency motion seeks injunctive relief only for their First Amendment and equal protection claims.